UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Brian Jhoan Perez Gonzalez,<br>Petitioner,<br>v.<br>Warden Northwest ICE Processing Center,<br>Respondent. | CASE NO. 2:26-cv-03563-JHC<br>ORDER |

## I
## INTRODUCTION

This matter comes before the Court on Brian Jhoan Perez Gonzalez's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has reviewed the materials filed in support of and in opposition to the petition, the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the petition.

## II
## BACKGROUND

Petitioner is a native and citizen of Venezuela. Dkt. ## 1 at 3; 6 at 2. On December 19, 2023, he applied for admission at the San Ysidro Port of Entry and was paroled into the United States on that date pursuant to the Immigration and Nationality Act (INA) § 212(d)(5)(A), 8 U.S.C § 1182(d)(5)(A). *See id.* Between December 2023 and December 2025, Petitioner

applied for relief from removal with the immigration court, appeared for a master calendar hearing, and received formal employment authorization. *See id.* The Government contends that Petitioner failed to report for a scheduled ICE check-in on June 3, 2025, in Richmond, Washington, *see* Dkt. # 6 at 2, but it provides no formal documentation for this allegation. *See generally* Dkt.

According to the Government, Petitioner's parole automatically expired on December 19, 2025, and he was served with a Notice to Appear (NTA) charging him as inadmissible under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), and placing him in removal proceedings. Dkt. # 6 at 2. About eight months later, and with no additional notice or procedures, Petitioner was arrested by ICE officers in Everett, Washington. *Id*. at 3; Dkt. # 1 at 3. Per the Government, Petitioner was taken into immigration detention after the officers "determined that Petitioner had failed to report to ICE for a check-in in June 2025, and Petitioner's parole had expired." Dkt. # 6 at 3. Soon thereafter, Petitioner was transferred to the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington, where he remains detained today. *See id*.; *see also* Dkt. # 1 at 3.

## III
## DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241 (a), (c). "The petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

Petitioner says that his re-detention on August 25, 2026, violated his right to due process under the Fifth Amendment of the U.S. Constitution. *See* Dkt. # 1 at 2. The Fifth Amendment of the U.S. Constitution prohibits the federal government from depriving any person "of life,

liberty, or property, without due process of law[.]" U.S. Const. amend. V. The right to due process "applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) (collecting cases). This includes petitioners paroled into the United States. *See Padilla v. United States Immigr. & Customs Enf't*, 2026 WL 2822044, at *19 (9th Cir. Sept. 21, 2026).

The traditional test for evaluating due process claims established by *Mathews v. Eldridge*, 424 U.S. 319 (1976), "can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).[1] "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Determining whether a governmental action violates due process generally requires consideration of three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

---

[1] In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* test, but "assume[d] without deciding" that *Mathews* applies in the context of immigration detention. 53 F.4th at 1207. In doing so, the Court recognized that: (1) other circuits have applied *Mathews* to due process challenges to immigration proceedings; (2) the Ninth Circuit has "regularly applied *Mathews* to due process challenges to removal proceedings"; and (3) the Supreme Court has applied *Mathews* in a due process challenge to an immigration exclusion hearing. *Id*. at 1206. More recently, courts in this District have repeatedly applied *Mathews* to evaluate noncitizens' due process challenges to re-detention decisions. *See*, *e.g*., *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention and collecting cases that employ this test in the context of immigration detention); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1135 (W.D. Wash. 2025) (applying *Mathews* to evaluate the constitutionality of the petitioner's re-detention); *Kumar v. Wamsley*, 2025 WL 2677089, at *2–3 (W.D. Wash. Sept. 17, 2025) (same); *Ledesma Gonzalez v. Bostock*, 2025 WL 2841574, at *7–8 (W.D. Wash. Oct. 7, 2025) (same); *Tzafir v. Bondi*, 2025 WL 3724708, at *2–4 (W.D. Wash. Dec. 24, 2025) (same). The Court likewise applies the *Mathews* factors here.

*Id.* at 335.

Here, the *Mathews* factors favor Petitioner. As for the first factor, Petitioner has an unquestioned liberty interest in being free from detention.[2] Such interest was only strengthened by the Government's decision to release Petitioner from custody in December 2023, thereby allowing him to live in the United States for two and a half years, receive employment authorization, and otherwise "gain[ ] a foothold in the United States" and "develop ties in this country[.]" *Pablo Sequen v. Albarran*, 800 F. Supp. 3d 998, 1009 (N.D. Cal. 2025) (cleaned up and citations omitted). And while a parolee's rights may differ from those of an admittee, *see* Dkt. # 6 at 6–7, the Ninth Circuit has clearly held that "[t]he limits on noncitizens' due process rights that *Thuraissigiam* recognized apply only to individuals on the threshold of initial entry, not individuals well within the country's borders and present for days, weeks, months, or years." *Padilla*, 2026 WL 2822044, at *11; *see also Caisa Telenchana v. Hermosillo*, 2026 WL 696806, at *10 (W.D. Wash. Mar. 12, 2026) ("Where, as here, a noncitizen has lived with relative freedom in the United States for years, the Constitution does not countenance fictional erasure of her actual presence in this country—or her concomitant due process rights.") (internal quotation marks and citations omitted). By revoking Petitioner's release, then, the Government undeniably inflicted a "grievous loss" on Petitioner's liberty and deprived him of a core private interest protected by the Due Process Clause. *Morrissey*, 408 U.S. at 482.

---

[2] *See, e.g.*, *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (explaining that freedom from detention "is the most elemental" of private interests affected by official action); *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (explaining that even conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]"); *Bd. of Pardons v. Allen*, 482 U.S. 369, 377–81 (1987) (recognizing that governmental action can create a liberty interest protected by the Due Process Clause).

As for the second factor, the risk of erroneous deprivation is high. The record suggests that Petitioner was arrested and immediately re-detained without any notice or opportunity to be heard. *See generally* Dkt. And although the Government alleges that such arrest was based on a missed ICE check-in, such allegation is unsupported by any formal documentation, nor did the arrest even occur within a year of the supposed missed check-in. *See id.* Petitioner was also arrested more than eight months after his parole allegedly expired. And courts in this District have questioned not only whether automatic revocation of parole without any notice to noncitizens comports with due process, but also whether parole automatically expires in such a scenario. *See, e.g.*, *Pantoja Sanchez v. Scott*, 2026 WL 2620522, at *5 (W.D. Wash. Sept. 4, 2026); *Dieng v. Hermosillo*, 2026 WL 411857, at *6 (W.D. Wash. Feb. 13, 2026). There is thus a clear risk of erroneous deprivation through the current procedures used.

As for the third factor, the Court acknowledges the Government's "interests in efficient enforcement and ensuring Petitioner's appearance at removal proceedings[.]" Dkt. # 6 at 8. It also acknowledges the Government's more general interest in "preventing danger to the community." *See Zadvydas*, 533 U.S. at 690. But here, Petitioner has no criminal history, no final order of removal, and no upcoming removal proceedings. *See generally* Dkt. And even if Petitioner missed an ICE check-in in *June 2025*, it is hard to rationalize any interest the Government may have in re-detaining Petitioner in *August 2026* without notice or opportunity to be heard solely on this basis. Courts in this District have also repeatedly found that "the Government's interest in re-detaining non-citizens previously released without a hearing is low[,]" especially because the potential costs of pre-detention procedures "are far outweighed by the risk of erroneous deprivation of the liberty interest at issue." *E.A. T.-B.*, 795 F. Supp. 3d at 1324. Accordingly, this factor also favors Petitioner.

In sum, all three *Mathews* factors favor Petitioner. The Court thus concludes that the Government's re-detention of Petitioner with insufficient notice and no opportunity to be heard violated his constitutional right to due process under the Fifth Amendment. As a result, Petitioner has proven by a preponderance of the evidence that he "is in custody in violation of the Constitution or laws or treaties of the United States" and is entitled to habeas relief. 28 U.S.C. § 2241(c).

## IV
## CONCLUSION

For these reasons, the Court GRANTS the Petition for Writ of Habeas Corpus (Dkt. # 1) and ORDERS that Petitioner be released from custody within 24 hours of this Order, subject to reasonable conditions of release. The Court further ORDERS that Petitioner shall not be re-detained unless and until he is provided with adequate notice and a hearing before a neutral decisionmaker.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 7th day of October, 2026.

John H. Chun
United States District Judge